First South v. Fifth Third. Both of them banks. Mr. Goins. Thank you, Your Honor. May it please the court, I'm Robert Goins. And I represent the appellant First South Bank. This court should uphold the jury verdict for breach of contract and fraud and award First South relief under the North Carolina Unfair Trade Practices Act and also prejudgment interest. In addressing the Unfair Trade Practices cause of action first, the district court erred for three reasons. First, the district court erred in concluding that North Carolina law did not apply. Secondly, in finding that First South failed to prove a violation of the North Carolina's Unfair Trade Practices statute. And third, in holding that First South waived damages and its recovery barred relief under that act. I think you ought to address the third point. I do too. Which is what this case is all about. And I must say, I read the dialogue between counsel and the court, I've read the briefs, and I find a lot of confusion. It looks to me, in this case, by a fair margin, that you ask for rescission below. And rescission means to invalidate the contract and return the considerations that were given. If I bought your bicycle for a gold watch and there was fraud in the transaction, you give me back the gold watch and I give you back the bicycle. That's rescission. Damages would be, of course, what you lost by reason of the transaction and it relies on the transaction itself. During your communications with the court in your arguments, you seem to think that there's something called rescissionary damages. And you say this is damages, you use the label on it, without understanding that rescission basically is taking the contract apart. And under the North Carolina statute, it says that you're going to get punitive damages only if you have a damages claim issue, a finding rather than rescission. The jury was instructed in this case on rescission. And they said, what are they going to give back to you as part of the transaction? The gold watch? The bike? That's really what they were saying. We're going to give you back your gold watch. And yet you argue as if this is a straightforward damage case. And I must say, it's very confusing. Well, Your Honor, thank you for that. What we stipulated to was what the measure of damages were. You did not. You asked for rescission. You asked again, the court asked you a specific question about it, and you asked for rescission, and the judge instructed the jury on rescission. And that's what the nature of this verdict is. The $2.5 million that you got in this case was theoretically what you paid out. Well, I would respectfully disagree. What we stipulated to was the measure of damages for a fraud in the inducement-type calls of action. And the case law is clear in North Carolina that the stipulation... Well, I know what the case law is. It's just common law. But you've got to address the notion of why you forewent a claim for damages and asked for rescission instead. You made it very clear in your discussion with the court. You not only said rescission, you said, and this is a quote, we essentially are money back and to restore us in the position we were prior to signing the contract, which is rescission. And then I was explaining that the proper measure of damages for fraud in the inducement, which this was, is to restore the plant back to the original condition. Every damage claim is that. When I sue for breach of contract and I'm relying on the contract, the theory of damages is to put me back where I was. And the court put you to... The court said, you're going to have to make an election here. I mean, there wasn't any... This isn't a ball that was hidden from you. There's also some suggestion that this was a resolution of some kind of discovery dispute. Is that incorrect? Well, the damages were stipulated as to what the damages were, and there were three components. One is the amounts paid, that we paid with credits back from the borrowers that was received in the foreclosure actions of the Burton Creek transaction. Also... But you see, these are not damages. You keep using that word, and that confuses the issue, and you rely on that in your argument. What you asked for is your money back as an item that was given. Restoration of the money back under rescission. Now, rescission, this is the contract. And if there's no contract, you get no damage. Well, in a cause of action for fraud and the inducement, the damage, the measure of damage is... No, no, hold it. You can get damages for fraud and the inducement. You can also get rescission, but you can't get both. And the district court asked you specifically,  And you made an election to the court. And it is our position that, if you read the North Carolina case law on damages for fraud and inducement, it says this. It's elementary that a plaintiff in a fraud suit has a right to recover an amount in damages, which will put him back in the same position as if the fraud wasn't practiced on him. Of course, that's standard common law. And you had that choice to go that way. You could have said, we don't want rescission. We want our damages. And our damages were, in this case, what we paid that we didn't get. And our damages were what the borrowers would have paid us in interest that we didn't get. Mr. Boynes, your argument continues to make the confusion. There is a difference in restoring the parties to their position under rescission, which vitiates the contract, and seeking damages for the fraud, putting you back in the same position. I was surprised on your election, I must say, because I would have thought that you could prove damages very easy, and you would have gotten punitive damages. Apparently, the jury was probably prepared to do that. We did get punitive damages. And see, that's the thing. The judge instructed the jury in the jury instructions. He used the word damages 37 times. In the veric form, he uses damages. That doesn't matter. And the jury awarded punitive damages. And the prerequisite for punitive damage is actual damages. So the confusion was perhaps maybe a misnomer. But I think that you've got to just look at this record. This wasn't just you made a mistake somewhere. This comes up time and again in the record. Well, and then if you look at the Joint Appendix 707 to 708, we clarified what we were talking about when we said we wanted our money back. And we said we haven't waived our right to damages. We're seeking damages, which is getting our money back. We're not seeking lost profits or consequential damages. We're seeking what is entitled under fraud and the inducement, which is restore us to the position we were, to give us our money back as far as possible, to restore us in a condition before the wrongful conduct occurred, to make us whole. We're not seeking damages in excess of getting our money back. That's what you say. That is correct. And those were the damages that we saw. And then in a dialogue with the court – Have you looked up under the law, common law, what rescission is? Yes, Your Honor. And you understand rescission is the vitiation of the contract? I understand that rescission – There is no contract under the remedy of rescission. And if there's no contract, you have no benefit under the contract to get anything. All you can do is get back when you get rescission is to undo the transaction. And your argument to the court was, well, in undoing the transaction, I want to get the money we gave, and the court said fine. And theoretically, you have to give up what you received. Yes, Your Honor. And I don't know if you received it, but the parties didn't spell that out too clearly. But you clearly get back what you gave pursuant to contract, because there is no transaction under rescission. It's ended. And you made that election. The election that we would receive would be damages for fraud and inducement. But assuming that's correct – What's the damages on inducement? There's no contract under rescission. Do you understand that? I don't understand how I could say it any clearer. Well, Your Honor, under the North Carolina Unfair Trade Practices Act, the recovery and the relief we would submit is not only just to a finding of damages. It applies to an actual injury, because that's what the case law says. It adds the word afterwards asking a judgment for damages. And then the judgment form says the amount of damages. The word damages is in the judgment form. Bernard v. Central Carolina Truck Sales. As a North Carolina case, it's absolutely instructive on this case. It says that the statute merely refers to one being injured and doesn't state the measure of measuring damages. And this is what the court said, that it would be, quote, illogical to limit the method of measuring damages or relief. It says that the North Carolina Trade Practices Act is a cause of action that's broader than traditional common law actions and to limit the availability of any remedy to cases where some recovery at common law would probably lie would be in disagreement with the letter and spirit of the act. There was a case that this circuit, it's not in the briefs, but it's called Belt v. Meyer Corporation, and it's cited to the Bernard case. It has to deal with a frying pan, a defective frying pan. And in that case, the court emphasized several very important points on the unfair trade practices cause of action. First, they say that trouble damages is assessed automatically and it's not subject to judicial discretion. They note that the statute only requires actual injury and it's much broader than merely damages. And finally, the court, in reference to the Bernard case that I previously cited, explained that the measure of damages should further the purpose of awarding damages and that purpose should be, and this is the crux of it, the purpose is to restore the victim to the original condition, to give back what was lost. That's what we got. You keep arguing damages as if this were a damage action and you haven't explained why you didn't make an election. Well, our election, let me make that clear, we believed our election was damages in a rescissionary form. The court asked you this specifically. There was a dialogue. I'm trying to locate that dialogue here, but there was a dialogue and the court says you have to make an election, and you said we're electing rescission. And when we made that, it wasn't a knowing election in the sense that we were foregoing any remedy for damages, or if that was the case, the court would not have instructed the jury on damages. The court would not have instructed the jury on mitigation of damages. And they were instructed on the mitigation of damages as well. In the Belt case, and that's important to point out, see rescission is an equitable type of relief as opposed to damages as a matter of law at law. But the Belt case cited to a Polo Fashions case, and the Belt case said that the equitable remedy for disgorgement of profits, and disgorgement is equitable in nature, that that is still, the court says, quote, a rough measure of plaintiff's damages, and the court held in Belt, this court, that treble damages was not subject to any discretion. Disgorgement of profits is a different theory altogether. It was based on infringement. That's not a rescission. But it's equitable in nature. And so that's the distinction between damages versus rescission is one is at law versus one is at equity. And there is a case that I would like to point out, and that's the Bostic case. And Your Honor was the authoring judge on that opinion back in 1993. And I think a critical distinction should be made with the Winnack versus Bostic case compared to what we have here. See, in Bostic, we had a transaction that was purely rescinded, rescinded by court order. The plaintiff elected pure rescission in that case. The transaction itself was literally rescinded, and the court ordered the plaintiffs to reconvey the property. Your Honor, in this case, there was nothing to reconvey. The only thing we could get was a monetary award from a court, from a jury, as to what we lost, and to restore us to our pre-contract status. The compensation that we received was in the form of damages. And, in fact, the jury came back with a question during their deliberations asking about damages and actually using the word damages in there. So the jury... The other side hasn't challenged the punitive damage award. Absolutely not. In some point, I think it was the JA 647, you gave the court the exact amount of money. Your chief officer testified he wanted $2.7 million. That's what he wanted. Yes, Your Honor. That's what he got. Well, he actually did not get that in actual damages. Actually, he didn't. He did not get that amount in actual damages. He got that all together. Right. If you add the punitives in there and the actual... $300,000 in punitives, he gets that amount. Exactly. And it's an odd amount. So what does that make the jury think? We're going to give your side exactly what they want. So maybe we should strike the punitives and give you only the damages less the punitives because you only asked for what you paid over as part of the transaction under rescission. Fortunately for you, the other side hasn't challenged the punitives. Well, and so we were operating, at least First South Bank, with the good faith belief that what we were seeking was damages. Now, I understand the nuances in the law, and I do respect your honor. What was your... The court addressed over several pages saying you can't have it both ways. You have to make an election, either to rescind or to firm the contract and seek damages. And your election was to rescind. Well, the court in 7... Am I inaccurate about that? I would say slightly, your honor, because on Joint Appendix 795, and this is on page 34 of the brief, opposing counsel said they withdrew their actual damages claim. This is what Judge Lewis said, quote, Well, I don't know about that. They tried the case exactly the way they intended it, which is to recover the money they paid in the loan. The question is whether or not that measure is available under these causes of action. So that goes to the understanding, the clear understanding from the First South position that we were stipulating as to our measure of damages imposed from fraud and the inducement. Case law in North Carolina clearly says the measure of damages is to restore someone back to their pre-state before the damage or the wrongful conduct was conducted on them.  Mr. Hurd. Thank you, your honor. May it please the court, I'm William Hurd, here for Fifth Third Bank with me at counsel table, my associate Reed Jacob, Trumman Sanders, also Alan Statman, the former Statman, Harris, and Irick, who tried the case. As you know from the briefs, this was originally a matter between First South Bank in South Carolina and First Charter Bank in North Carolina. Fifth Third Bank acquired First Charter back in the middle of 2008 after many of the events in this case had already occurred. With respect to the attempt by opposing counsel to trouble damages, we certainly agree with the court's end of the colloquy that has just taken place that they did make a choice. And that choice was made throughout the trial. It was made because they had failed to disclose their computation of damages as required by their discovery obligations. And in order to be able to put on any evidence about money at all, they had to say, we want to rescind the contract. In addition to the places the court has already spoken about that decision, I'm going to quote very briefly from the closing argument of opposing counsel, found at JA 812. We're not asking for anything more or anything less than a refund. I don't want to be any clearer than that. But you haven't challenged the punitive damages. Well, you know, I don't think our briefs challenge this directly. You know what we require, direct challenges, not implicit ones. We do, however, Your Honor, challenge the verdict against... Entire verdict. Entire verdict. We don't single out the punitive damages. But if the fraud verdict were to fall, then of course that would undercut... Of course. But you have to win that to get rid of the punitive damages. We agree with that, Your Honor. With respect to the Belk case, I don't know why opposing counsel did not cite that in his reply brief. I don't have any explanation for that. He didn't offer any. But I do believe the case that governs here today, Judge Nimari, is your decision in the Boston case, 1993, which makes it very clear that the North Carolina Unfair Trade Practices Act cannot be invoked in the case of rescission rather than multiplying the damages or multiplying the size of the transaction. That's just not appropriate. Of course, we also point out in our briefs that you don't even have to go that far in this case because Judge Lewis was right when she found that North Carolina law does not govern. This is a federal diversity case. They chose to bring it in South Carolina. What's the material difference between South Carolina and North Carolina? Well, Your Honor, if South Carolina law applies, then they did not plead the South Carolina Unfair Trade Practices statute. I understand, but what's the difference in the laws? Well, Your Honor, I'm not sure I can give you a complete list of differences. I want the major difference. The major difference is, Your Honor, if South Carolina law applies, then the Unfair Trade Practices Act of North Carolina does not apply. Yeah, but what is the difference? What's the substantive difference between the two acts? Oh, well, there is one, Your Honor. The one important difference is that the South Carolina Act contains an element that the Unfair or Deceptive Act must affect the public interest, which the court in South Carolina has interpreted as meaning capable of repetition, and that is the Haley Nursery case cited in our brief where the court in South Carolina, South Carolina Supreme Court, affirmed a demur because, quote, there are no allegations in the complaint that suggest that any of the unfair act or deceptive practices allegedly employed by respondents in the sale of the business might possibly reoccur, end quote. Again, no allegations of possible reoccurrence in the complaint. Does the South Carolina Act in any form require automatic mandatory travel damages? I don't believe that it does, Your Honor, but we would say that the South Carolina claim fails at the threshold because they never raised it. Judge Lewis raised it on her own after conclusion of trial,  but because the statutes are different in that respect, a very critical respect to point out, we never had the chance to put on evidence that might go to why this is not capable of repetition. Leaving aside the fact they didn't allege it, which ought to be fatal, leaving aside the fact that they didn't either allege the statute or allege that element of the statute, which ought to be fatal, it's really unfair for us to be confronted with a statute after trial that we had no notice was coming, the South Carolina statute, and then not being able to put on evidence going to that capable of repetition form, not capable of repetition form. And, of course, we've got good evidence. Fifth Third Bank is not First Charter Bank, and there's no capability of repetition. With respect to... I'm sorry, about that last argument, you think since there's been a merger or a takeover, that automatically means there's no capability of repetition? Well, what I think is... Automatically? No, I would not say automatically, but I would say that certainly suggests that had we known that the South Carolina statute might be at issue, that we would have been able to put on evidence, which might have included a change in the culture, put on evidence as to why this particular concern, whatever act they might rely upon, is not capable of repetition. Of course, again... Why not? Why not? Yeah. The jury found fraud here, misrepresentations and fraud in a real estate transaction. Well, it did, and what were those frauds? Well, we don't... No, I'm not asking you that. I'm asking you why is it not capable of repetition? Capable of repetition by First... Fifth Third? Capable, yes. It doesn't mean it had to be repeated. It means at that point in time, forward-looking, was it possible that it could be repeated? Your Honor, I think capable of repetition means something the South Carolina law had to do with is there some history of this fraud? Is there some practice of this fraud? We don't have that here. As Judge Niemeyer said, you have a jury verdict for finding this fraud, so some 12 people or 6 people disagree with you. But, no, no, you don't get to invoke the South Carolina statute merely by finding a fraud. I hear you. Does South Carolina law have the same provision that requires a judgment of damages? That North Carolina has? Your Honor, I believe it does, but... What North Carolina says, and if damages are assessed in such cases... In other words, a person has to be injured and if damages are assessed. Your Honor, I've not briefed that point. Well, that sounds like a really important point to bring. No, no, the most important point is they never let... That's the point that the district court relied on. Why it wasn't applicable. Because there was a rescission here, not an entry of damages. Well, that's correct, Your Honor. That's correct. And I believe, actually, when Judge Lewis went through, thinking back to her opinion, when Judge Lewis went through her opinion as to why the South Carolina Act did not apply, I believe, in her opinion, she essentially duplicated that portion of her discussion of why the North Carolina Act would not apply even if North Carolina law applied. So, yes, she found that there had to be the same kind of damages in the South Carolina law that was missing under North Carolina law. But you don't know, as you stand here, if that's so. Is that right? I'm not at all in her opinion. I think she relied upon that same point. I understand your answer is she relied on it. I'm asking you if that is the case. I'll be happy to follow up today's argument with a letter on that score, Your Honor. I do believe it has to be damages. I don't know what else would be multiplied. But whatever the law may be in South Carolina, it was not pled. It was not even pled after trial. Judge Lewis just brought it forward in an abundance of caution. But we cannot, in all fairness, be forced to answer to a claim that we don't know about until after the evidence is put on and that opposing counsel never raised and that contains an element that was never alleged. So whatever the statute may say... Was the breacher contract submitted to the jury? Yes, Your Honor, it was. And this is another problem with that case. The lack of special interrogatories is the problem with that case. What page is that on? Do you know where the verdict is, the verdict form in that? The verdict form, Your Honor, is... It is an exhibit. It is... It's a long problem. Indeed. The verdict form appears. It's on appendix page 1094 and 1095. Now, here's one problem I was getting to with the lack of special interrogatories. They found a breacher contract, they found fraud, and they entered a single figure for recovery.    It's a breach of contract. It's a breach of contract. But a single figure for recovery, which springs off of what? Is this figure based on the breach of contract or is it based on the so-called fraud? We don't know. We don't know how much of that figure... Did you ask for special interrogatories? No, Your Honor, we did not. And it was their burden. They're trying to multiply... And you didn't have any objection to this? I think there were no objections to the way the case was presented to the jury with the lack of special interrogatories. It's a little strange because the jury, the judge instructed the jury on rescission and yet let the jury determine that there was a breach of contract. Well, breach of contract, the relief they were seeking for breach of contract... I'm not talking about relief. I'm talking about a breach. If you're going to vitiate the contract, you don't breach it. Your Honor, their theory is that the breach was so material that they were allowed to rescind it. You're not understanding my question. My question is how can you even address the issue? If you're going to rescind a contract, there's no contract to breach. So the question is, is the contract to be rescinded? Your Honor, they had two theories of rescission. It doesn't matter. Rescission is rescission. One theory of rescission was based on fraud. The other theory is that our client had so badly breached the contract that they were entitled... That's not rescission. Your Honor, with all due respect, that was their theory and that's the way the case was tried, that the breach was so material it wouldn't be part of the contract. It was tried that way. Now it renders everything... I thought your theory was it was tried for rescission and that's all they're entitled to. Your Honor, it was tried for rescission under both theories. That's not a theory of rescission that a contract's breached. Yes, Your Honor, it is. They're inconsistent. Your Honor, it is a theory under which they try the case... You're not listening to me. I'm suggesting to you how can you rescind a contract, vitiate it, and then sue on that contract for breach? You're either going to affirm the contract. If you affirm the contract, you can sue for breach of it. If you're going to rescind the contract, there is no contract. You can't get a breach. Your Honor, the... That's the problem. Counsel seemed to induce a lot of confusion in the district court. I understand your explanation of the point. The word breach, as it was used in this case, meant a violation of the material terms of the contract so serious as to entitle them to rescind it. There is no such theory of the common law. Your Honor, that was the theory under which the case was tried. Well, in other words, you're suggesting that they put this misnomer into the case, that you have a breach of contract and you get rescission. Yes. That's the way it was tried. Yes, Your Honor. That reason, all they're entitled, and they kept saying over and over again, we want our money back. That's all we want. We want our money back. It's $2.7 million, blah, blah, blah. We want that money. Refund, refund, refund. That's all they said. You're just sort of undermining everything your whole case stands on. Indeed. You're giving it away on a platter right now. The theory that you have, I think, in this case, is that they tried it on rescission, and they're only entitled back to what they gave. Yes, Your Honor, they tried it. Now, if they tried it on breach of contract, they can get damages. Your Honor, they could not get damages. They didn't put on any evidence of damages other than their money back. That's the only thing they asked for. We want a refund. Now, the terminology used in the case was not. . . It's not terminology. It's a concept. In other words, there's got to be an understanding of the whole structure of the case. Isn't there. . . I'm sorry. Go ahead. Isn't there a discussion where the district judge says, you can't have it both ways. Yes, you can. And she says, either you're going for rescissions or you're seeking damages. And then she says something like what you're saying now, which is, so your theory is that there was a problem from the beginning, but that it was an ongoing problem afterward, and so the breach continues. Is that what you're suggesting she allowed the case to be tried on? Because I think she was more consistent in saying it's one or the other. Fish or cut bait. Your Honor, I think that the way the case was tried. . . I need to know your position. What your position is to how it was tried. Was it tried on a breach of contract theory where the damages were limited, or was it tried on a rescission theory? It was tried on a rescission theory, Your Honor. There's no question about that. That's different than you just told me two seconds ago. Your Honor, it was tried on a rescission theory that had some odd names attached to the components of it. But it was tried. . . The overarching thrust of the case is they wanted a refund, and they were limited in being able to ask for money because of their failure to comply with their discovery obligations, and they made that stipulation to the court that all they wanted was their money back. And whatever name you attached to it, that is rescission, and you can't trouble rescission even under the North Carolina law, even if that law applies. All right. Ms. Goins? Your Honor, in my attempt to answer some of the questions posed to opposing counsel, material differences between North Carolina and South Carolina under the Trade Practices Act, there's really no substantive difference. There is a procedural difference that's somewhat important. In South Carolina, a jury can determine UTPA violations, or you can stipulate that the judge could. And in North Carolina, only the judge determines if there's been a violation. And in North Carolina, the law says finding a fraud by the jury is automatic. That's irrelevant in this case. Right. Everybody agrees the judge is going to decide. Right. And to a more important point, does South Carolina's statute require damages? The answer is affirmatively absolutely not. The statute only says, quote, an ascertainable loss, and it's much broader than damages. That's found in South Carolina Code 39-5-140. It doesn't use the word damage. It doesn't use anything. It says an ascertainable loss. Well, First South Bank had an ascertainable loss for about five years of over $2.7 million. So we would say that, as we briefed in this case, that she should have awarded us damages, treble damages, under that statute as well. So we tried this case as breach of contract. I mean, you look at the verdict. And by the way, this verdict was approved by everyone. This was a stipulated verdict form. This is not something that Judge Lewis came up with. In fact, as I recall, I think we worked together to submit this to the judge, and she approved it. And it says, only cause of action for breach of contract. I mean, this was a breach of contract action. And we alleged that the breach was so material in this case that it awarded you. And then the second page of the verdict form, Joint Appendix 1095, we, the undersigned jurors, assess damages in favor of First South Bank. So the jury, in this case, as clear as day on the verdict form, assessed damages. And that goes to the understanding of, why would the district court judge use the word damages 37 times in her jury instructions if we didn't believe that damages were being used? I'll tell you why. Because you kept using the word rescissionary damages for the money that you were trying to get back. You called them rescissionary damages. And then you said, that's the same as rescission. And that's what you used throughout. You constantly said rescissionary damages, and you made it clear all we want is what we gave, what we want back. And you call that rescissionary damages, and everybody referred to it. But it's a misnomer. It doesn't make sense. Unless you're talking about damages in preparation for the contract, and that's a different aspect, you can probably get preparation damages plus rescission. And see, what we got, the damages that we stipulated to, and it was a stipulation of damages, was what we paid minus the credit from the borrowers. Second, interest that the borrowers would have paid us under the underlying Burton Creek loan. That doesn't sound like rescission in its pure equitable sense. And then what we paid for an appraisal, what we paid year after year for taxes. Let me ask you something. If you're right about that, what were you doing when you were talking to the judge, and the judge was pressing you on an election, and you told the judge, I don't want rescission. Now, what were you doing at that point? Were you intending to mislead the court? No, Your Honor. I didn't think so. But the question is, what was the purpose of that dialogue? Well, the purpose of the dialogue was to be very clear on what we were seeking in the case, and that was what we had lost, what we had parted with. And damages is what... So you agree you were telling the court, when the court asked you about election, you were seeking rescission. Is that correct? We were not seeking rescission in the equitable sense, because there was nothing to unwind, there was nothing to resent. All we were asking was our money. Look, I'm not asking you to argue. I'm asking as a factual matter. When you were before the court, and the court asked you to elect, didn't you elect rescission? No, Your Honor. We elected... What did you elect? We elected damages to give us our money back, to restore us in the condition that we were in before the... Because, see, I was relying on, in honesty to the court, I was relying on literally black-letter law from North Carolina that says damages for fraud in the inducement is to restore a person back to the place they were before the contract was entered into. What were you doing when you were talking to the court and the court was pressing you for election? I was citing... Not citing. Did you believe that you... I thought you said you just want your money back to restore you to the way you were before the contract without, I mean, basically electing rescission. I was citing the Tradewinds Airlines case. I had it in my hand, and I was reading to her the sentence in the case that says the measure of damages and fraud in the inducement is to restore the plaintiff to its original position. That is to give back to him what was lost as far as it may be done by compensation in money. Now, on the instructions to the jury, the court instructed on rescission. Did you object to that? She instructed, as I recall, she instructed them as it relates to rescissionary relief concerning breach of contract when the breach is so material and substantial. But damages was all throughout her charge, including mitigation of damage. How could the jury consider mitigation? This is the judge talking to the jury. As I stated earlier, the plaintiff in this case seeks recovery in the form of rescission. Specifically, the plaintiff seeks to recover back the monies it has parted with because of the contract issue. Was that error? No, and that's right out of the Tradewinds Airlines case. I don't care where it's from. I'm trying to ask you, was that error? No, Your Honor. Then the court submitted it to the jury on rescission and said, determine the amount that you gave in order to have that restored back to you. And I think some of the confusion, potentially, is the fact that North Carolina law, when it talks about fraud and the inducement, and what is the measure of recovery. That's if you seek damages. Well, what we sought to give us back. Fraud and the inducement can lead to rescission, too. You keep quoting a damage case. But if you have fraud and the inducement, you can seek damage. You can affirm the contract and get damages. Or you can rescind the contract and have everything come back. And in some cases, there is no damage. And all you want back is what you gave. And in this case, it's not pure rescission because we never gave anything back. We didn't get anything. That's the thing. We didn't get anything. What are you talking about? You got $2.8 million? No, from the contract. Like, for example, there was a transaction in place. Like in the Winnet versus Bostic case. The court actually ordered that the transaction be rescinded and undone and unwound. No, no. It would be better if you understood the concept and argued the concept, argued what happened. These cases you're applying are not relevant unless you get into that. If it's a damage case, we know what the measure of damage is. It's the same as everywhere. If it's a rescission case, we know what you're entitled to. The real problem in this file is that the confusion you're expressing now is the same confusion you expressed below. Now, here we have the judge submitting it to jury on a rescission, saying the plaintiff in this case seeks recovery in the form of rescission. And that seems to be consistent with the dialogue you had with the court. Now, you're telling me now here on appeal that you did not make an election to rescind. That's what you just told me earlier. So somebody is wrong. Either you elected to rescind or the court was in error. And I think it goes back to perhaps a misnomer of rescissionary damages because I don't need an explanation. I need to understand what you think you said, whether you elected rescission, and whether the court was wrong when they said you did. Well, I thought we were electing the measure of damages. I didn't understand that we were taking damages out of the way completely. And it's reflected even on the verdict form where it says we assess damages. But at one point, I see my time is escaping me, one point that we have not discussed. We are going? Thank you, Your Honor. All right. I guess we have to hear from Mr. Hurd on his. Thank you, Your Honor. I don't know if we argued your points on appeal. You have four minutes. Mr. Hurd, can I ask you, before you get to that, if you should be successful in saying or if you should be successful in saying that there wasn't rescission, what would the remedy be? I'm sorry? If this wasn't a rescissionary case, if there was a suit for damages, what would the remedy be in front of us? Well, we think the court should overturn both verdicts. Yeah, but I'm not asking you about your arguments. I'm asking you about his arguments. If his argument fails, then what's the remedy? Your Honor, I'm afraid I'm not quite understanding the question. He says that he's asked for money damages, not just rescission. And if we say that that's correct, what is the remedy? Well, it's impossible to say what damages he was awarded that would do to fraud. And that has to do with... Well, of course, that is because of the jury form to which your client agreed. Your Honor, they have to prove what number is to be trebled if trebling is to be done. And Judge Lewis made this point very clear, that because there were no special interrogatories, you couldn't treble anything anyway. If they prevail in saying, okay, it wasn't rescission, it was damages, then you've got breach of contract, you've got fraud. What is damage for breach of contract? What is damage for fraud? Without their having asked for special interrogatories, there's no way to unscramble that omelet, and so they lose. Now, that's up to them. I don't know what they lose. What do they lose? What they lose is they lose the ability to treble anything. Well, okay, they lose the treble damages claim, but what happens to the verdict? Well... Because you keep pointing out the problems in the verdict that you didn't object to, but they've got the verdict now. Well, I suppose that if the court is going to recast this money awarded by the jury as damages, and, of course, the court will do that based on all evidence, then I suppose they get right what they got right now, and certainly nothing more. And certainly no prejudgment interest. By the way, just an aside on that, they quote this case, Broussard. What was the interest component? I thought their number had interest in it. Oh, it did. It did. And that's why we call it Broussard for a moment, because they cite Broussard for the proposition that they can get... No, no, I want to know factually. I don't want to know the case. It was $231,000. Pardon me? About $231,000. They cite it as interest as part of their decision. That's a little odd, but that's what they presented to the jury, and Broussard stands for the proposition that you can't get statutory prejudgment interest if you put any interest claim before the jury. Footnote 10 says that if they had put in Broussard, if they had held any prejudgment interest... Are you challenging the judgment, having the interest component taken out? I think that, you know, is impossible to decipher, what the jury was doing exactly on that. We challenge the entire judgment. Well, interest was in that number that was given to the jury, wasn't it? It was. It was. And the jury gave that number? No, Your Honor, the jury did not quite do that, because if you look at the total award without the punitives... Yes, but you weren't challenging the punitives. No, no, I understand, but it's difficult to know what the jury was doing with its numbers, but I do want to say, with respect... Did the jury give the number that was asked for? The total number of... Award. The total award. The total award was the total of what was asked for, but it was distributed between the punitives... I know it was broken down, but the number that was asked for had, as a component, interest. It did. It did. So don't we know what the jury did? Well, I don't know. It's difficult to decide, Your Honor, what the jury did back there with those numbers. I always hate to try to speculate on that. Your Honor, I would say this, that if there is an inconsistency, as Your Honor has pointed out, between a breach of contract recovery and asking for a refund, then the fact that they asked for a refund and the case was tried on that basis is yet another reason why the district court erred in not granting our motion for a directed verdict on the breach of contract theory, and is another reason why this court should overturn that breach of contract verdict. What's the theory for turning over the breach of contract? Well, it's inconsistent... Of course, in addition to what's in the briefs, it's inconsistent with the way the case was tried. And did you make that argument before the court? Yes, we did, Your Honor. You made the argument that this is an inconsistent verdict. I see that, Your Honor. I'd like to see that. Where are you pointing to in the record? Your Honor, I believe it was made... Not by. Where? Where? Yeah. Uh... Your Honor, I believe... May I confirm? Of course. Your Honor, last time it was argued during that portion of the trial where it was seeking a directed verdict and the court denied that. And do you know where that is in the record here? But was that argument then preserved after the jury came in? Uh... Because... Judge, you have to preserve it, don't you, under Rule 59? Yes, Your Honor, you do. All right. I'll have to... That's all right. We'll sort it out. All right. Thank you. We'll, uh... Come down and recount and take a short recess.
judges: Paul V. Niemeyer, Diana Gribbon Motz, M. Hannah Lauck